UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-CR-20236-GAYLES

**UNITED STATES OF AMERICA,**
   *Plaintiff*,

**vs.**

**RIGOBERTO CORDERO,**
   *Defendant*.
_____/

### DEFENDANT RIGOBERTO CORDERO'S
### *AMENDED* MOTION TO WITHDRAW GUILTY PLEA

Defendant, Rigoberto Cordero, by and through the undersigned counsel and pursuant to Fed. R. Crim. P. 11(d)(2)(B) and this Court's Paperless Order requiring the filing of an amended motion (D.E. 124), files his Amended Motion to Withdraw Guilty Plea entered on September 7th, 2023 *(Dkt. No.74)*. In the instant case, former counsel's actions were objectively unreasonable and deficient, severely prejudicing the Defendant in that former counsel had an actual conflict of interest which Mr. Cordero did not knowingly waive that adversely affected his performance. In support thereof, Defendant would show:

### CONCISE STATEMENT

During the critical stages of the proceedings, including discovery and plea negotiations, Attorney Stuart Kaplan never advised Defendant Cordero and Codefendant Romero that he may not be able to give equally good representation to both him and his wife.  This is because Cordero's involvement in the case was never exactly the same as his wife, Romero.  Decisions made on his wife's behalf were never necessarily consistent with Cordero's best interest.  For instance, the wife was running the business, submitting the claims, and supervising the employees.  Mr. Cordero, on the other hand, was a patient greeter who coordinated the patients'

transportation in the mornings. His involvement in financial affairs and management of the company was limited in scope. The plea agreement negotiated on his behalf by his former counsel makes no distinction, instead, saddling Mr. Cordero with an underserving enhancement as a leader and organizer in the case and forfeiting his home that otherwise has not nexus to the offense.

## **PROCEDURAL HISTORY**

1. On June 2, 2022, both Rigoberto Cordero and his wife, Mileidy Romero, were charged by indictment with 18 U.S.C. § 1349 Conspiracy to Commit Health Care Fraud and Wire Fraud, 18 U.S.C. § 1347 Health Care Fraud, 18 U.S.C. § 371 Conspiracy to Pay Healthcare Kickbacks, 42 U.S.C. § 1320a-7b(b)(2)(A)(B) Payments Of Kickbacks In Connection With A Federal Health Care Programs.

2. On June 15, 2022, Cordero and his wife Romero signed an agreement for legal representation with Attorney Kaplan for a fee of $555,000 (Five Hundred Fifty-Five Thousand Dollars). Mr. Kaplan assured Defendants that he would retain another attorney to represent Mr. Cordero. Further, Mr. Kaplan agreed to hire a Spanish interpreter as Defendants did not speak English. During that meeting, Mr. Kaplan failed to advice and counsel Defendants about the dangers inherent in joint representation. Specifically, Mr. Kaplan did not advice Defendants that an attorney's conflict of interest springs not only from multiple representations but also from a conflict between the attorney's personal interest and that of his clients.

3. During this period spanning from June 15th until the arraignment on July 12, 2022, Mr. Kaplan failed to retain another attorney or hire a professional interpreter to assist in communicating with his Spanish speaking clients the ethical and legal problems associated with joint representation.

4. On July 12, 2022, both Defendants were arraigned before the Honorable Judge Lisette M. Reid *(Dkt. No.41)*. Neither attorney Kaplan requested, nor the Court conducted a *Garcia* hearing to advise the Defendants of the perils of joint representation. The Defendants were not provided, nor did they read and sign the standard Rule 44 (c) waiver concerning conflict of interest. This form is officially available in English as well as Spanish. The English and Spanish versions of the form also require the U.S Magistrate Judge to certify that the defendants have been fully advised of their rights to separate counsel in accordance with Fed. R. Crim P. 44 (c).[1]

5. During the next 15 months, while discovery was being reviewed and decisions made about potential plea agreements for both Defendants, Defendant Cordero was kept in the dark as all text messages, emails and Zoom communications were coordinated through Amanda Vega, Ms. Romero's twenty-three (23) year old daughter.  Records of those communications will be produced at an evidentiary hearing in this cause.

6. On Friday, September 1, 2023, AUSA Christopher Clark sent attorney Kaplan a revised plea agreement and factual basis for both Mr. Cordero and Ms. Romero's review.  AUSA Clark asked attorney Kaplan: **"Have we already had a Garcia conflict hearing with regard to your clients or will the court need to conduct one on Thursday?"**

---

[1] **WAIVER OF RIGHT TO SEPARATE COUNSEL**
I have read the above explanation of my rights to separate counsel and have asked any questions that I had of my lawyer or the Judge.  I understand my right to have a separate lawyer, but I want to give up this right.  I want _____ to be my lawyer, even though he/she represents another defendant in this case and might have a conflict of interest which will not be in my best interest.  I understand that if I change my mind about this later the trial will not be postponed so that I can get another lawyer.

Dated:_____                                      Defendant:_____

**CERTIFICATE OF MAGISTRATE JUDGE**
The defendant whose name appears above appeared before the undersigned in open Court this date, was fully advised by me in accordance with Fed. R. Crim. P. 44(c) and signed the above waiver in my presence.

Dated:_____                                      _____
                                                                          United States Magistrate Judge

7. On Friday, September 1, 2023, at 12:29 p.m., Mr. Kaplan forwarded the email to Amanda Vega requesting that the documents be reviewed by both Cordero and Romero. Cordero is a nurse who has no legal background or experience. However, there is no indication that Mr. Kaplan intended to meet with Cordero and his wife to review the documents in anticipation of the Thursday deadline. Also notable is the fact that Mr. Kaplan made no effort to address the specter of a *Garcia* hearing or explain its significance.

8. Fifteen months have passed since Mr. Kaplan made his appearance on behalf of both defendants. The importance of counsel's role at this stage cannot be understated. As the Supreme Court noted, the plea-bargaining process is a critical stage of the criminal process. First, counsel must know the Guideline structure and how his client would fare if convicted at trial. *United States v. Day*, 969 F.2d 39, 43(3rd Cir. 1992) ("Because the Sentencing Guidelines have become a critical, and in many cases, dominant facet of federal criminal proceedings, we can say, however, that familiarity with the structure and basic content of the Guidelines has become a necessity for counsel who seek to give effective representation.") Second, counsel must accurately relay this information to his client so that he understands what he faces if the conviction comes as a result of a plea versus a jury verdict and can make an informed decision on how to proceed. *Id*. When counsel does not, he has acted ineffectively. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

9. On Thursday, September 7, 2023, the Defendants appeared before the Court for a Change of Plea. After advising the Defendants of the charges against them, the Court asked the following:

> The COURT:   "As to Mr. Cordero and Ms. Tellechea, Romero Tellechea, Mr. Kaplan, has there already been a Garcia Hearing?"

| | | |
|---|---|---|
| Mr. Kaplan: | | "No your Honor, there has not" (Trans. 4:3-5) |
| The COURT: | | "In this case you both are being represented by the same attorney, Mr. Kaplan, however, each of you is entitled to have your own attorney representing you." |

(Trans. 4:4-10). The Court then advised them about some of the perils of joint representation. However, one of the examples provided likely confused Defendant Cordero:

> **"I will give you a perfect example. You know, sometimes attorneys are able to negotiate a better plea agreement for his or her client than another attorney might for that attorney's client."**

(Trans. 8:13-15).[2]

The import of this admonition is that one attorney may be able to secure a better plea agreement than another without addressing the real issue inherent in a hearing of this nature, namely, the inherent disadvantages of conflicted counsel. In other words, a conflicted attorney could recommend that the first defendant plead guilty which may hurt the other defendant's case or attempt to work out a better deal for one client as opposed to the other defendant. The Court's warnings did not cure the confusion, particularly, conflicts where spouses with an unequal level of responsibility are involved. Finaly, the Court never specifically asked Defendant to articulate what they understood to be a conflict.

      10. Plea agreements and factual proffers reflect a defendant's relevant conduct within the charged offense. Both are critically important for the preparation of the presentence report and

---

[2] *Cf.* Advice of Right to Separate Counsel read in *Moreno v. United States*, 17-civ-21578-Lenard/O'Sullivan, November 21, 2017 (SDFL) at page 5:
ADVICE OF RIGHT TO SEPARATE COUNSEL
The United States Constitution guarantees that every defendant in a criminal case shall have the right to effective assistance of counsel. When one lawyer represents two or more defendants in the same case he may experience a conflict of interest, which means he may not be able to give equally good representation to each defendant. This is because no two persons are ever exactly alike and one person's involvement in a criminal case is never exactly the same as that of another person. In order to be of the greatest assistance to you, your lawyer might need to say or do something that would not be in the best interest of your co-defendant and you both."

corresponding Guideline calculation. They should reflect each defendant's knowing and willing participation in the offense. Here, the factual proffer for Mr. Cordero and Ms. Romero are identical, including the amount allegedly earned from the commission of the offense. Also, Ms. Romero's signature appears on the signature line for Mr. Cordero. Instead of preparing a new Factual Proffer, the parties affixed Mr. Cordero's name right below that of Ms. Romero. This raises the question about whether Mr. Cordero was even aware of the conduct being attributed to him and/or whether the previous counsel reviewed and advised him as to the contents thereof prior to the change of plea hearing. (The referenced factual proffers were the ones sent on September 1, 2024 by Mr. Kaplan to Amanda Soto with instructions to have them reviewed and signed by Mr. Cordero and Ms. Romero).

11. The undersigned filed his notice of appearance on behalf of Mr. Cordero on March 22nd, 2024 (Dkt. No.100).  Since then, the undersigned has spent countless hours meeting with Mr. Cordero.  In contrast, Mr. Cordero never met with Attorney Kaplan in private, aided by an interpreter, to discuss his options.  Former counsel's conflict of interest affected his representation and was objectively unreasonable.  Finally, alternatives were not pursued because to do so would have required Mr. Kaplan "to say or do something that would not be in the best interest" of Ms. Romero.

## **LEGAL ARGUMENT**

The decision whether to allow a defendant to withdraw a guilty plea, on a showing of "a fair and just reason," is left to the discretion of the trial court Fed. R. Crim. P. 11(d)(2)(B). See also, *United States v. McCarty*, 99 F.3d 383, 385 (11th Cir. 1996). "A pre-sentence motion to withdraw is to be liberally construed," although there is no absolute right to withdrawal. *United States v. Cesal*, 391 F.3d 1172, 1179 (11th Cir. 2004), vacated on other grounds by *Cesal v. United States*, 545 U.S. 1101 (2005) (quoting *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988)). It is the Court who "decides the good faith, credibility and weight due a defendant's assertions in support of a motion to withdraw his plea." *United States v. Wright*, 492 F. App'x 972, 974 (11th Cir. 2012) (footnote call number and citation omitted). In deciding a pre-sentence motion to withdraw guilty plea, the Court considers "the totality of the circumstances, including: (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *United States v. McKinney*, 135 F. App'x 313, 319 (11th Cir. 2005) (internal quotation marks and citation omitted).

Mr. Kaplan's failure to enter meaningful plea negotiations on behalf of Mr. Cordero while also representing Ms. Romero's interests adversely impacted Mr. Cordero. For example, Mr. Cordero unwittingly assumed a larger role in the conspiracy as borne out by the plea agreement and factual proffer reflecting the role of a leader organizer, when, in fact, Mr. Cordero was likely the least culpable individual in the conspiracy.

### A. **CLOSE ASSISTANCE OF COUNSEL**

Close assistance of counsel was unavailable. The former counsel's actions were objectively unreasonable and deficient prejudicing defendant as he had a conflict of interest, which Mr. Cordero did not waive, adversely affecting his performance. To prove adverse effect, a petitioner must establish a) that the attorney could have pursued an alternative strategy; b) that the alternative was reasonable; and c) that the alternative was not pursued because it conflicted with the attorney's external loyalties. *United States v. Gignac* (17-cr-20891-CMA, SDFL August 23, 2018)(Dkt. No. 61) at 2, *citing United States v. McKinney*, 135 F. Appx. 313, 319 (11th Cir. 2005). Although a defendant may waive his right to a conflict free attorney, the determination of the validity of the waiver may depend upon the circumstances of the case, including background, experience and conduct of the accused.

Here, the existence of a potential conflict was only brought to the attention of Mr. Cordero immediately before the plea was taken even though former counsel had been involved in representing the spouses jointly for over fifteen months. The record clearly establishes that a conflict of interest worked to Mr. Cordero's detriment. First, most of Mr. Kaplan's communications were filtered through Amanda Vega, the intended recipient being Codefendant Romero, not Cordero.

Second, due to Mr. Cordero's limited understanding of the legal system he requested to meet in person with Mr. Kaplan to review the plea agreement. One of Mr. Cordero's major concerns was losing his home that he purchased in 2005, where his two daughters grew up. This concern was ignored as the house was included as a substitute asset in the plea agreement. Had Cordero refused to include the home as substitute asset in the plea agreement, the government's only recourse would have been to file an independent civil action to collect the deficiency judgment for the amounts uncollected from the forfeiture judgment. As reflected in the contemporaneous communications between Cordero and Amanda Vega, Cordero primary concern was that the home not to be included in the plea agreement. **Exhibit A**—Message from Amanda Vega to Attorney Kaplan: ¶ 17 "my father is willing to do the time but that he won't give up his house;" and ¶ 13 "write to Kaplan that you grew up I that house." Despite Mr. Cordero's concerns, Mr. Kaplan did not meet independently with Mr. Cordero with the assistance of an independent interpreter. Exhibit A—Message from Mr. Cordero to Amanda Vega ¶ 12 ("tell Kaplan to send me the document in Spanish and that I want a meeting with him with a translator to professionally discuss the status of the case."). It is reasonable to infer from the message that Mr. Cordero did not receive the close assistance and advice of counsel as required by the Sixth Amendment.

### B.  PLEA WAS NOT VOLUNTARILY

Mr. Cordero's concerns about the terms of the plea agreement, factual proffer and forfeiture of his home were ignored. Mr. Cordero recognizes a plea constitutes a solemn event deserving strong recognition. Nevertheless, he feels that setting aside the plea is the proper course of action.

The effective representation of Cordero required that the former counsel argue that Romero was far more culpable. During plea negotiations former counsel grouped Cordero and Romero together even though they had different levels of culpability. The bulk of the discovery, including

audio and video recordings, captures primarily Romero conducting and running the business while Cordero had a minor role in the business affairs. Former counsel, however, was prevented from making that argument because doing so would have adversely affected Romero while benefiting Cordero. This is the more obvious manifestation of the conflict—in order to negotiate a better plea for Cordero, the least culpable defendant, Mr. Kaplan would have had to pit Romero against client Mr. Cordero. Specifically, joint representation deprived Cordero of claiming a minor role, or at the least, no role enhancement. Accordingly, former counsel's conflicting duty was not speculative, instead, it was an actual conflict of interest.

As mentioned above, Mr. Cordero did not have the opportunity to fully review discovery, discuss potential defenses to the crime charged, and be accurately advised of how the advisory sentencing guidelines applied to him. As will be more fully discussed at an evidentiary hearing, Mr. Cordero was unduly influenced by family members who also induced him to hire Mr. Kaplan for a significant fee.

### C. PRESERVING JUDICIAL RESOURCES

In *United States v. Gignac* (17-cr-20891-CMA, SDFL August 23, 2018), Chief Judge Altonaga was presented with a situation similar to the one here. There, several lawyers had represented Gignac, some of whom had a potential conflict of interest. In response, the government argued it would be prejudiced "in having to reconstruct the case in its entirety after having spent four months working on the plea agreement with the Defendant." *Id.*, D.E. 61 – Order. The court commented:

> **"The court's resources will not be conserved by forging ahead with sentencing; certainly this case would be revisited on a post-conviction motion requiring the court's attention and time were the motion denied."**

*Id*. at 3 at line 9. The Court added that "one can only imagine the many months of work the Government will be involved in when a section 2255 motion is filed should the Court not allow current counsel the opportunity of reviewing discovery and considering defenses with her client." *Id.*

This is not the only case where significant judicial resources were waged in the government's defense of 2255 proceedings asserting ineffective assistance of counsel in joint representation cases. In *Moreno vs. United States*, 2017 U.S. Dist. Lexis 193491 (Case No. 17-civ-21578-Lenard/O'Sullivan (SDFL 2017), the defendant sought to vacate a plea on grounds that retained counsel was conflicted where he also represented defendant's spouse in the same proceedings. Following a two-day hearing on the motion to vacate the plea, Magistrate Judge O'Sullivan vacated the conviction on grounds that the attorney failed to explain the factual proffer and the plea agreement to the movant. Specifically, when the movant was called to testify at her sentencing hearing, she testified in a manner inconsistent with her signed factual proffer, which was identical to her co-defendant's spouse. The court found that the attorney's failure to properly review and explain defendant her factual proffer "cause[ed] counsel's performance to fall outside the wide range of reasonable professional assistance." *Id*. 32.

Here, Mr. Cordero has also shown prejudice. Prejudice is defined as a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id*. at 32, citing *United States v. Strickland v. Washington*, 466 U.S. 668, 694 (1984). Cordero's signing of what appears to be the wrong factual proffer lends credence to his lack of knowledge of the proceedings, including the change of plea hearing.

11

### D. DEFENDANT WAS PREJUDICED AS A RESULT OF CONFLICT OF INTEREST

Mr. Cordero was prejudiced in a number of different ways beginning with the agreement to pledge his house as a substitute asset in the plea agreement. As would be shown by text and email exchanges, Mr. Cordero was adamant against including his home in the plea agreement. This home was purchased in 2005 for approximately $300,000.00. No nexus existed between the purchase of the house and the charges in the Indictment. This home is where his daughters were raised and therefore has a significant sentimental value. More specifically, a confluence of different factors, including his limited knowledge of the English language, the attorney's failure to review the plea agreement and factual proffer with an interpreter and undue pressure from family members caused the unwitting signing of the defective factual proffer and consequentially his lack of understanding of the terms of the plea agreement.

### CONCLUSION

An attorney's conflict of interest springs not only from multiple representations but also from a conflict between the attorney's personal interest and that of his client. When Mr. Kaplan decided to represent both defendants, he had a duty to explain the ethical and legal problems associated with joint representation. The problems are straightforward—"counsel who represents two clients with potential competing is torn between duties." Counsel can properly turn in no direction. He must fail one or do nothing and fail both. As explained above, Mr. Kaplan's conflict prevented Cordero from receiving effective representation which prevented Cordero from making a knowing and voluntary acceptance of the plea.

Respectfully submitted,

*/s/ Joaquin Perez*
JOAQUIN PEREZ, ESQ
6780 Coral Way
Miami, FL 33155
Tel: (305) 261-4000 Ext. 3703
Fax: (305) 662-4067
FL. Bar No.:  335339
jplaw1@bellsouth.net

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 88.9, undersigned counsel certifies that he has conferred with Assistant United States Attorney Christopher Clark who opposes the relief requested herein.

*/s/ Joaquin Perez*
JOAQUIN PEREZ, ESQ.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed this 20th day of June 2024 VIA CM/ECF filing system and to all parties of record via the same system.

Respectfully Submitted,

*/s/ Joaquin Perez*
JOAQUIN PEREZ, ESQ.