UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-CR-20236-GAYLES

**UNITED STATES OF AMERICA,**
        *Plaintiff*,

**vs.**

**RIGOBERTO CORDERO,**
        *Defendant*.
_____/

## MOTION FOR SANCTIONS FOR VIOLATION OF THE DUE PROCESS PROTECTIONS ACT ("DPPA")

Defendant, Rigoberto Cordero, by and through the undersigned attorney moves this court for an Order finding that government counsel failed to comply with FRCP 5(F)(1) by withholding impeachment information about Sindia Cordero, a witness crucial to the prosecution's case. Accordingly, Defendant prays for sanctions including exclusion of evidence, granting continuance and dismissing the case with or without prejudice.

## CONCISE STATEMENT

1. **Prosecution's Obligations Under *Brady* and *Giglio***

The prosecution is obligated to disclose evidence favorable to the defense, including impeachment material (*Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972)). Suppression of Sindia Cordero's fraudulent activities, which are directly relevant to her credibility, violates these obligations. This failure also contravenes the Due Process Protections Act (DPPA), which mandates strict adherence to disclosure requirements under Federal Rule of Criminal Procedure 5(f)(1).

1

2. **Materiality of the Withheld Evidence**

Evidence of forgery and document fabrication by Sindia Cordero. is material, as it undermines the reliability of her testimony, a cornerstone of the Government's case. Materiality requires only a reasonable probability that the outcome of the trial would have been different had the evidence been disclosed (*United States v. Bagley*, 473 U.S. 667, 682 (1985); *United States v. Schier*, 438 F.3d 1104, 1107 (11th Cir. 2006)).

3. **Government's Noncompliance with the DPPA and Sanctions**

The DPPA requires courts to enforce compliance with *Brady* obligations by imposing appropriate sanctions for noncompliance. These may include exclusion of evidence, granting a continuance, or dismissing charges (*United States v. Olsen*, 737 F.3d 625, 631 (9th Cir. 2013); *United States v. Morrison*, 449 U.S. 361, 365 (1981)).

The prosecution's failure to disclose material impeachment evidence despite being placed on notice constitutes egregious misconduct. This failure has prejudiced Defendant's ability to mount effective defense and warrants sanctions to preserve the integrity of the judicial process.

**<u>OVERVIEW</u>**

Federal prosecutors have constitutional and statutory duties to disclose many types of evidence to defendants. This principle of disclosure is central to our criminal-justice system. "A prosecutor that withholds evidence on demand of an accused which, if made available, would tend to exculpate him, or reduce the penalty helps shape a trial that bears heavily on the defendant . . . That casts the prosecutor in the role of an architect of a proceeding that does not

Case 1:22-cr-20236-DPG   Document 183   Entered on FLSD Docket 11/20/2024   Page 3 of 7

comport with standards of justice." Brady v. Maryland, 373 U.S. 83, 87–88 (1963). And federal prosecutors, like all parties that appear before the Court, have ethical duties of candor. ("The prosecution has a special duty not to mislead; the government should, of course, never make affirmative statements contrary to what it knows to be the truth.").

The Due Process Protections Act ("DPPA") amended the federal rules of criminal procedure to require district courts to issue, at the outset of every criminal case, an order confirming the prosecutor's disclosure obligations under Brady v. Maryland, and the consequences for violating the order. The DPPA now requires courts to enter Brady orders before trial, at the outset of the case. The Brady disclosure obligation is rooted not only in the Due Process Clause, but in "the special role played by the American prosecutor in the search for truth in criminal trials." "[T]he United States Attorney is 'the representative not of an ordinary party to a controversy, but of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" "Thus the term 'Brady violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence, that is, to any suppression of so-called 'Brady material.'"

Allowing prosecution to assess the potential impact of evidence pre-trial through a subjective lens undermines the defendant's right to a fair trial and risk prioritizing strategic advantage over justice. The obligation extends to any information favorable to the accused that pertains to guilt or punishment, which can support the defense's case or impeach prosecution witness. *Giglio v. United States*, 405 U.S. 150 (1972) not only is that assessment by non-neutral prosecutors often faulty, but it has the potential to elevate gamesmanship over the defendant's right to a fair trial.

3

A better approach is simply to require disclosure of evidence "favorable to the accused" i.e., evidence "that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses." Where evidence clearly has substantial value to the defense, elementary fairness requires it to be disclosed, without consideration of its likely effect at trial. Where doubt exists as to its usefulness to the defense, prudent prosecutors will resolve such doubt in favor of disclosure. If they do not, under the Act they will be at notice of enforceable consequences.

**FACTUAL BACKGROUND**

The Government has indicated, via an email dated September 25, 2024, its intent to introduce evidence under F.R.E. 404(b) to establish a prior association involving Defendant Rigoberto Cordero, his ex-wife Sindia Cordero (hereinafter "Sindia"), and Dr. Bermudez. The purported evidence pertains to the operation of Bermudez Medical Center, where the three allegedly shared Medicare profits. These allegations of Medicare fraud are unrelated to the charges in the present indictment, which involve alleged misconduct related to psychosocial rehabilitation (PSR) services.

The PSR services in question were designed to assist recipients in improving their ability to perform daily activities while managing mental health disorders. The Government seeks to connect this unrelated Medicare fraud allegation to the present charges solely through Sindia's involvement with Future Clinical Research ("Future") and Eternity Community Mental Health Corp. ("Eternity"), entities associated with Defendant.

4

## CREDIBILITY ISSUES WITH SINDIA CORDERO

Sindia's credibility is paramount, as the Government may rely heavily on her testimony. On September 30, 2024, at 5:58 pm, defense counsel informed the prosecution that Sindia had forged Defendant's signature on various documents, including checks payable to him. This accusation is supported by handwritten analysis conducted by an expert retained by the defense, confirming with a reasonable degree of certainty that Sindia engaged in forgery.

Further evidence suggests Sindia engaged in document fabrication in connection with Bermudez Medical Center, Eternity, and Future, including submissions to the Florida Department of State. These acts of deception directly affect Sindia's credibility, making disclosure of related exculpatory and impeachment materials essential to ensuring a fair trial.

## FAILURE TO INVESTIGATE AND DISCLOSE

On November 3, 2024, at 6:39 pm, defense counsel reminded the prosecution of Sindia's pattern of forgery and requested a thorough investigation. On November 4, 2024, at 8:04 am, the prosecutor responded via email with a cursory reply:
*"In response to your previous inquiry, I have not been able to substantiate the allegations that you assert with regard to government witness Sindia Cordero."*

This response lacked detail regarding investigative efforts or findings. Defense counsel followed up, asking whether Sindia had been confronted with the allegations or if any diligence was undertaken to substantiate the claims. The prosecutor replied at 8:45 am:
*"I interviewed the witness with regard to your inquiry. She replied in the negative."*

This superficial approach demonstrates a disregard for the seriousness of the allegations. Instead of pursuing an independent investigation, the prosecutor relied solely on Sindia's denial, ignoring corroborating evidence provided by the defense.

## DELIBERATE IGNORANCE

The prosecutor's failure to address these concerns mirrors the concept of "deliberate ignorance" as articulated in the Eleventh Circuit Pattern Jury Instructions:

*"When knowledge of the existence of a particular fact is an essential part of an offense, such knowledge may be established if the Defendant is aware of a high probability of its existence, unless the Defendant actually believes that it does not exist."*

In this case, the prosecutor's refusal to investigate serious allegations of forgery and document fabrication reflects a willful blindness to the witness's credibility issues. By ignoring credible evidence and expert testimony, the prosecution jeopardizes the integrity of the judicial process.

## HANDWRITING EXPERT TESTIMONY

The defense's handwriting expert has concluded, with a reasonable degree of certainty, that Sindia forged Defendant's signatures on checks and other significant documents. This evidence undermines Sindia's reliability as a witness and raises questions about her involvement in fabricating documents central to the Government's case.

## CONCLUSION

The prosecutor's failure to thoroughly investigate and disclose Sindia's fraudulent

activities constitutes a violation of the Due Process Protections Act and Brady v. Maryland. These actions threaten Defendant's right to a fair trial. The Government's reliance on a witness with a documented history of deception without conducting due diligence compromises the integrity of the judicial process and warrants the imposition of sanctions.

**WHEREFORE,** Defendant prays for sanctions including exclusion of evidence, granting continuance and dismissing the case with or without prejudice.

Respectfully submitted,

*/s/ Joaquin Perez*
JOAQUIN PEREZ, ESQ
6790 Coral Way
Miami, FL 33155
Tel: (305) 261-4000 Ext. 3703
Fax: (305) 662-4067
FL. Bar No.: 335339
jplaw1@bellsouth.net

### CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 88.9, undersigned counsel certifies that he has conferred with Assistant United States Attorney Christopher Clark who opposes the relief requested herein.

*/s/ Joaquin Perez*
JOAQUIN PEREZ, ESQ.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on this 20th day of November 2024 VIA CM/ECF filing system and to all parties of record via the same system.

Respectfully Submitted,

*/s/ Joaquin Perez*
JOAQUIN PEREZ, ESQ.