UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>22-20236-CR-GAYLES (COHN)</u>

UNITED STATES OF AMERICA

v.

RIGOBERTO CORDERO,

   Defendant.
_____/

### GOVERNMENT'S TRIAL BRIEF REGARDING FLORIDA MEDICAID REQUIREMENTS FOR PSYCHOSOCIAL REHABILITATION

For the Court's reference at trial, the United States, through undersigned counsel, submits the following excerpts from the Florida Medicaid Provider General Handbook (the "Provider Handbook") and the Florida Medicaid Behavioral Health Community Support Services Coverage Policy (the "Coverage Policy") (collectively, the "Policies").

During the December 10, 2024 status conference, counsel for the Government and the Defendant each presented to the Court a summary of the case. During this hearing, counsel for the Government provided a high-level summary of the relevant aspects of the Policies. Afterward, counsel for the Defendant provided, with no supporting authority, an inaccurate representation of the Florida Medicaid eligibility and service requirements, suggesting that the threshold to qualify is very low, and insinuating that nearly anyone would qualify, and that the services are nothing more than providing a place for senior citizens to socialize. After hearing the Defendant's position, the Court requested from both parties that "any law that you can provide the Court on that issue

1

will certainly be helpful." December 10, 2024 Hrg. Tr. at 24:20-21. Accordingly, the Government provides the following relevant excerpts directly from the Policies.[1]

1. **Claims were fraudulent because patients were paid kickbacks.**

One aspect of the fraud the Defendant is charged with stems from the fact that patients were paid to attend the Clinics. The Provider Handbook prohibits the payment of kickbacks:

| Solicitation (Patient Brokering) | Providers are not permitted to knowingly solicit, offer, pay, or receive any remuneration, including any kickback, bribe, or rebate, directly or indirectly, overtly or covertly, in cash or in kind, in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made, in whole or in part, under the Medicaid program, or in return for obtaining, purchasing, leasing, ordering, or arranging for or recommending, obtaining, purchasing, leasing, or ordering any goods, facility, item, or service, for which payment may be made, in whole or in part, under the Medicaid program. |
|---|---|

Florida Medicaid Provider General Handbook, at 2-57.

Because the Provider Handbook prohibits the payment of kickbacks, the claims submitted by the Defendant for patients who were paid kickbacks were invalid and fraudulent claims.

2. **Claims were fraudulent because patients were ineligible for the services billed for.**

Another aspect of the fraud the Defendant is charged with stems from the fact that some patients of the Clinics were not eligible for the services billed for. Counsel for the Defendant presented his own view of the eligibility requirements as follows:

> They don't have to be ill. They don't have to be in a psychological hospital. They don't have to be found to be suffering from some kind of illness. This is a transition program created by Medicaid to provide an outlet for those senior citizens who otherwise will spend the whole day either at a senior citizens' home without anything to do or otherwise would be looking at TV or getting up in the morning without getting dressed and trying to figure out what they are going to do. What this program will do is it will allow them to have a place in which they will have some kind of socialization so when they get up in the morning, somebody will pick

---

[1] Full copies of both of the Policies are attached hereto as Exhibits A and B, are on the Government's Exhibit List, and were separately provided to the Defendant.

them up and somebody will take them to a place where they can talk to other senior citizens, and they can in some way spend some meaningful time outside of the home. So this idea that these are people who are really sick and somehow, in order to qualify for this psychosocial services, that they have to be ill is wrong.

December 10, 2024 Hrg. Tr. at 14:4-12.

Defense counsel's version of the eligibility requirements is unsupported by any authority and drastically misstates the Policy, which expressly requires that patients exhibit specific symptoms:

> **2.2 Who Can Receive**
> Florida Medicaid recipients requiring medically necessary behavioral health community support services that have a mental health diagnosis and exhibit one of the following symptoms:
> - Psychiatric
> - Behavioral or cognitive
> - Addictive behavior
> - Clinical conditions severe enough to cause significant impairment in day-to-day functioning

Florida Medicaid Behavioral Health Community Support Services Coverage Policy, at 2. November 2019.

As shown above, the Provider Handbook sets forth specific clinical eligibility requirements. Contrary to the Defendant's summary, this is not simply an adult day care program, or an outlet for senior citizens to socialize or have something to do.

3. **Claims were fraudulent because services were not provided as billed.**

Another aspect of the fraud the Defendant is charged with is based on the fact that Medicaid was billed for specific services, primarily psychosocial rehabilitation and clubhouse services, when patients did not receive those services as defined by the Policies.

At the December 10, 2024 hearing, counsel for the Defendant represented that these services are "designed to get people together to socialize so they can cope with life" and for people to "spend some meaningful time outside of the home" December 10, 2024 Hrg. Tr. at 24:16-17; 14:25-15:1. He further described these services as an alternative to watching television, explaining

3

that "for a senior citizen, you can go to a senior citizens' center and do nothing, or you can stay at home and watch TV." *Id.* That is a direct misstatement of the Policies. To the contrary, the Policies make clear that these services are not merely to give senior citizens something to do – they are to provide a specific clinical purpose:

> **4.2.1 Psychosocial Rehabilitation Services**
> Psychosocial rehabilitation services restore a recipient's skills and abilities necessary for independent living through the following activities:
>
> - Development and maintenance of necessary daily living skills
> - Food planning and preparation
> - Money management
> - Maintenance of the living environment
> - Training in appropriate use of community services
>
> Psychosocial rehabilitation services combines daily medication use, independent living and social skills training, housing services, pre-vocational and transitional employment rehabilitation training, social support, and network enhancement to recipients and their families.
>
> Psychosocial rehabilitation services must assist the recipient with the following:
>
> - Eliminating or compensating for functional deficits and interpersonal and environmental barriers
> - Restoring social skills for independent living and life management
>
> Psychosocial rehabilitation services can include the following to facilitate cognitive and socialization skills necessary for functioning in a work environment and maintaining independence:
>
> - Work readiness assessments
> - Job development on behalf of the recipient
> - Job matching
> - On-the-job training and support
>
> Psychosocial rehabilitation services must concentrate on the amelioration of symptoms and restoring functional capabilities. They can be provided in a facility, home, or community setting.
>
> Psychosocial rehabilitation services can be delivered to groups that do not exceed 12.

4

> **4.2.2 Clubhouse Services**
>
> Clubhouse services provide structured, community-based services delivered in a group setting that utilize behavioral, cognitive, or supportive interventions to improve a recipient's potential for establishing and maintaining social relationships and obtaining occupational or educational achievements.
>
> Clubhouse services consist of social, educational, pre-vocational and transitional employment rehabilitation utilized to assist the recipient with the following:
>
> – Eliminating functional, interpersonal, and environmental barriers
> – Restoring social skills for independent living and effective life management
>
> 2019                                                                                       3
>
>                                         Florida Medicaid
>              Behavioral Health Community Support Services Coverage Policy
>
> – Facilitating cognitive and socialization skills necessary for functioning in a work environment
>
> Clubhouse services are rehabilitative and utilize a wellness model to restore independent living skills. They must be delivered in a group setting that cannot exceed 12.
>
> Florida Medicaid recipients must be at least 16 years old to receive Clubhouse services.

Florida Medicaid Behavioral Health Community Support Services Coverage Policy, at 3-4. November 2019.

Multiple Government witnesses will testify about how the Policies are applied. However, it is clear from the face of the Policies that the Defendant's statement that these services are supposed to just give patients "somewhere to socialize" or "somewhere to go outside their home" is false. The Policies explain and require that these services are intended to restore the patients' abilities and skills, and assist them with specific activities to address their issues. Notably, the Policies require these services to "restore" and "rehabilitate" specific skills, and require concentration on the "amelioration of symptoms and restoring functional capabilities," indicating

5

that the patients need these services because they have lost these skills. This is a far cry from merely a place to go and socialize or an alternative to watching television, as the Defendant previously represented to the Court.

Should counsel for the Defendant misstate the law, the eligibility requirements, or the Policies during trial, the Government intends to object.

Respectfully submitted,

>MARKENZY LAPOINTE
>UNITED STATES ATTORNEY
>
>By:  /s/ *Christopher J. Clark*
>CHRISTOPHER J. CLARK
>
>ASSISTANT U.S. ATTORNEY
>Florida Bar No.0588040
>99 Northeast 4th Street
>
>Miami, Florida 33132-2111
>Tel: (305) 961-9167
>Christopher.Clark@usdoj.gov
>JACQUELINE Z. DEROVANESIAN
>Florida Bar No. 125662
>Jacqueline.derovanesian@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 22, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

>  /s/ *Christopher J. Clark*
>CHRISTOPHER J. CLARK
>ASSISTANT U.S. ATTORNEY